UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LaCARRIE BYER,

                      Plaintiff,

vs.

PERIODONTAL HEALTH SPECIALISTS OF ROCHESTER, PLLC, ROXANNE LOWENGUTH, DDS, MARY ANN LESTER, DMD, THOMAS ZAHAVI, DMD, and DENTAL DIVAS, LLC

                      Defendants.

**COMPLAINT**

**Civil Action No.: 17-6412**

**Jury Trial Demanded**

Plaintiff LaCarrie Byer ("Plaintiff" or "Ms. Byer") alleges as follows:

## PARTIES

1. Plaintiff LaCarrie Byer is a natural person with a residence at 14 Roxborough Road, Rochester, New York 14614.

2. Ms. Byer is an African American female.

3. Upon information and belief, Periodontal Health Specialists of Rochester, PLLC ("PHS") is a domestic professional limited liability company of which Roxanne Lowenguth, DDS, Mary Ann Lester, DMD and Thomas Zahavi, DMD are members.

4. At all times hereto, PHS was a corporate entity responsible for the day-to-day management and operations of a periodontal dental practice of which Ms. Byer was an employee.

5. At all times pertinent hereto, Mary Ann Lester, DMD ("Lester") was and is a member of PHS and licensed to practice dentistry in the State of New York.

6.  At all times pertinent hereto, Thomas Zahavi, DMD ("Zahavi") was and is a member of PHS and licensed to practice dentistry in the State of New York.

7.  Upon information and believe Roxanne Lowenguth, DDS ("Lowenguth") is a resident of the County of Monroe, State of New York and a member of PHS.

8.  Upon information and belief, Roxanne Lowenguth was a dentist duly licensed to practice dentistry in the State of New York.

9.  Upon information and belief, Dental Divas, LLC is a limited liability corporation with a principal place of business in the County of Monroe, State of New York and Dr. Lester and Dr. Lowenguth are its members.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and is conferred by 42 U.S.C. §§ 2000(e) – 2999(e)-17 (amended 1972, 1978 and by the Civil Rights Act, Pub. L. No. 102 – 166) and under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C. §201 et seq. ("FLSA").

11. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear the Plaintiff's State Law claims brought under the New York Labor Law and New York Executive Law.

12. Venue is proper in the United Stated District Court for the Western District of New York pursuant to 28 U.S.C. § 1391 because Defendants reside in this district, employed Plaintiff in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

13. Ms. Byer has exhausted administrative remedies prerequisite to bringing her claims as follows:

14. On August 22, 2016, Ms. Byer filed a claim of discrimination with Equal Employment Opportunity Commission (EEOC). The EEOC assigned Charge No. was 525-2016-00839.

15. On March 28, 2017, the EEOC mailed Ms. Byer a Notice of Right to Sue provided that she exhausted her administrative remedies under Title VII. A copy is attached hereto as **Exhibit "A"**.

## FACTS

16. Ms. Byer worked continuously at PHS from September 1998 until November 6, 2015 with the exception of one year.

17. Ms. Byer held the title of surgical coordinator since 2008 working with Lowenguth directly.

18. During the time of her employment, up to and including November 6, 2015, Ms. Byer suffered episodes of severe and continuing and pervasive racial discrimination and thereafter, retaliation by all Defendants and most notably Lowenguth.

19. By way of example only, Defendants' discrimination and retaliation directed at Ms. Byer included, but was not limited to the following statements, behaviors and interactions:

    a) In October 2015, Lester spoke with Ms. Byer in private and discussed some of the issues that brought Ms. Byer to leave her employment. She acknowledged the racially discriminatory remarks made by Lowenguth and the failure of Lester and PHS to stop the discriminatory behavior.

    b) In March 2013, Ms. Byer was asked by Defendants not to park in a certain area and stated that, in fact, no one was allowed to park in that area. The very next day other staff members started parking there and continued from that point on.

c) Ms. Byer was addressed in the imaging room at the end of the work day and was asked "what are you doing here? From now on, you are not to be alone anywhere in the office, things are coming up missing". Ms. Byer asked "you think I am a thief" Lester just said "you are not to be left alone in the office anymore".

d) At a members' meeting (Lowenguth, Lester and Zahavi) in 2013 with no office manager involved, Lester wanted Ms. Byer to work more hours without altering her pay or offering overtime. When declined by Ms. Byer, Lester threatened to "take away" the Dental Diva pay. Ms. Byer told them to "take it" and give it to someone else. This never happened.

e) On many occasions, Lowenguth would call Ms. Byer into an operatory where she would ask her to "bust a move" and depicted her as a rapper that wears gold chains.

f) In January 2015, Lowenguth consistently sent racially insensitive cartoons throughout the office. In one such email, Lowenguth superimposed Ms. Byer's face and replaced Ms. Byer's natural hair with an afro.

g) In Fall 2014, Lowenguth returned from a trip to New York City with leather studded necklaces with the terms "bitch" and "slave" on them and insisted Ms. Byer wear one such necklace in the PHS office. This was done in the presence of the office manager at that time. Ms. Byer looked over to the office manager and asked if she "was going to do something about this" and the office manager put her head down and said nothing.

h) When hosting office lunches, Lowenguth consistently made the comment that PHS should have fried chicken for Ms. Byer and make sure the office staff did not touch the chicken until Ms. Byer had hers first.

i) In Fall 2013, Lowenguth brought Ms. Byer in an operatory in the presence of an older African American female patient. In the presence of this patient, Lowenguth stated

that if the patient did not proceed with the recommended treatment plan, she would "sick" her "pit bull" (referring to Ms. Byer) on the patient to "jack her up."

j) In Summer 2014, Lowenguth consistently ridiculed Ms. Byer's dress and hair style insisting that it be changed on a number of occasions. On one such occasion, Lowenguth went on the receptionist's computer, displayed an internet picture of the fictional character "Buckwheat" and said that it was Ms. Byer.

k) On numerous occasions, Lowenguth would speak with a southern intonation in her voice and make prejudicial discriminatory comments directed at Ms. Byer.

l) In 2014, Lowenguth made comments about Ms. Byer's hair such as "Ms. Byer looks like a 'Mammy' on the plantation."

m) On multiple occasions, Lowenguth suggested that she wanted Ms. Byer to speak with patients of color and "talk that talk" to them because Ms. Byer could relate to them.

n) While at a dinner conference in Boston with the office partners, co-workers and representatives of a dental implant company, a waiter made an announcement that they were out of ribs for the night. Lowenguth slammed her hands on the table and said "now what are you going to eat Carrie, they are all out of ribs" and laughed.

o) In 2014, after Lowenguth was confronted about her jokes and comments directed at Ms. Byer, Lowenguth made a comment that Ms. Byer was too sensitive and made a comment to the front desk staff that she can't say "black beans" because Ms. Byer is too sensitive.

p) While at a marketing meeting in Florida in Spring 2014, Lowenguth sent a cartoon depicting Ms. Byer looking like a wild animal. Zahavi, another member of PHS, spoke

to Lowenguth about his disapproval of the behavior of his partner. Once this was addressed, Lowenguth did not speak to nor interact with Ms. Byer for a couple weeks.

q) In the presence of a referring doctor, Lowenguth pulled Ms. Byer's necklace and said "come on Kunta" and made kissing noises as she walked up the steps leaving Ms. Byer and the doctor at the bottom of the stairs.

r) In October 2015, Lowenguth physically accosted Ms. Byer in the presence of other office personnel.

19. This conduct constituted unlawful discrimination, harassment and created a hostile work environment.

20. On numerous occasions, Ms. Byer complained about this discriminatory conduct and harassment to PHS office managers, including Marcia Tateo and Peter Bennett. On a number of occasions, Zahavi, a member of PHS, specifically apologized for Lowenguth's racist behavior directed at Ms. Byer.

21. On a separate occasion, Lester (another owner of PHS) suggested that Ms. Byer should document the racist behavior of Lowenguth.

22. On another occasion, Ms. Byer confided in Zahavi to help talk with Lowenguth about her behavior. He stated, "I don't understand what is going on, she behaves, but she then gives you things, so it looks like it's all ok". Ms. Byer stated that if she were to make any similar comments about another staff member or doctor, she would be fired on the spot and Zahavi just shook his head and said "at least you can leave and find another office, I am in a partnership with her".

23. Despite direct knowledge and direct reports of Lowenguth's racist behavior directed at Ms. Byer, the members of PHS and its business managers did nothing to stop Lowenguth or protect Ms. Byer.

24. On or about April 8, 2015, while in a meeting with the partners and (former) office manager Jennifer Houck, Dr. Lowenguth stated to Ms. Byer: "you need to remember who provides your family with the lifestyle you have and who signs your paycheck." At some point in the meeting, Ms. Byer started to tear up and was told by Lowenguth and Lester "don't start with that" and that Ms. Byer was being disrespectful by not looking at them. Zahavi asked the two partners to let Ms. Byer be. After the meeting, Jennifer Houck (former office manager) asked Ms. Byer "why didn't you stand up for yourself, tell them what you said to me?" Ms. Byer told Mrs. Houck "would it have changed what happened or what they think?"

25. On many separate occasions in Fall 2015, PHS' current office manager, Peter Bennett, told Ms. Byer that she clearly had grounds to file a lawsuit against PHS based on Lowenguth's behavior. He also suggested that any interaction that needs to be had between Lowenguth and Ms. Byer be buffered and sent through him and that Ms. Byer is not to confront her anymore. He also stated he would have a separate conversation with the partners.

26. As a direct result of Lowenguth's discriminatory behavior and her retaliation for Byer's complaints, Ms. Byer attempted to avoid direct contact with Lowenguth in order to maintain her job, but this was not possible.

27. Ms. Byer suffered substantial emotional, physical and mental distress as a result of Lowenguth's constant harassing comments and discriminatory actions toward her which affected her both personally and professionally, and resulted in a hostile work environment. Ms. Byer also sustained monetary damages as a result of this unlawful conduct.

28. Lowenguth's discriminatory behavior toward Ms. Byer continued from her time of employment through the date Ms. Byer resigned on November 6, 2015.

29. Ms. Byer resigned to protect her health and emotional well-being.

30. Ms. Byer has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Lowenguth's discriminatory behavior. Throughout the years, both Lowenguth and Lester made jokes of some of Ms. Byers' ailments, ie: migraines, stomach issues, and panic attacks.

## AS AND FOR A FIRST CAUSE OF ACTION

### DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

31. Ms. Byer repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

32. Complainant establishes a prima facie case of discrimination with evidence by showing 1) that she is in a protected class, 2) that she qualifies for the position, 3) that she suffered an adverse employment action for circumstances for which inference of discrimination may be made. *McDonnell Douglass Corp. v. Green*, 491 U.S. 792 (1973). Further Title VII requires an unlawful reason need only be the motivating factor in the adverse employment action.

33. Ms. Byer is a member of a protected class because she is a woman and she is an African American.

34. Ms. Byer was subjected to harassment, a hostile work environment and retaliation to the point where she had no choice but to leave her place of employment based upon the behavior and conduct of Lowenguth and the failure of Zahavi and Lester to stop the ongoing harassment.

35. Defendants' behavior was clearly discriminatory and as a result of Defendants' adverse actions, Ms. Byer experienced severe deterioration of her physical and emotional health, together with anxiety, emotional pain and suffering and loss of enjoyment of life.

## AS AND FOR A SECOND CAUSE OF ACTION

### RETALIATION IN VIOLATION OF TITLE VII

36. Ms. Byer repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

37. To establish a prima facie case for retaliation/opposed discrimination, Plaintiff must show 1) that she engaged in a protected activity, 2) employer was aware of the activity, 3) that the employer took adverse actions and 4) that a causal connection existed between the protected activity and the adverse action. *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

38. Ms. Byer on several occasions complained directly to Lester and Zahavi regarding Lowenguth's discriminatory behavior. In addition, Ms. Byer complained directly to the business and officer manager then working for PHS during the relevant period of time. Each and every time a complaint was filed, no action was taken to curb or discourage Dr. Lowenguth's clearly discriminatory and harassing language, comments and behavior. In fact, matters escalated and became worse.

39. As a result of Defendants' adverse actions, Ms. Byer experienced severe deterioration of her health, fear, anxiety, humiliation, shame, embarrassment, emotional pain and suffering and loss of enjoyment of life.

## AS AND FOR A THIRD CAUSE OF ACTION

### HOSTILE WORK ENVIRONMENT UNDER NEW YORK EXECUTIVE LAW §296 (6)

40. Ms. Byer repeats and realleges each and every allegation set forth herein in the proceeding paragraphs as though fully set forth herein.

41. Ms. Byer was subject to discriminatory and racists remarks and behavior by Lowenguth.

42. Lowenguth's behavior was sanctioned by defendants and no effort was made to stop Lowenguth's behavior.

43. Defendants' behavior was hostile, severe and pervasive and made for a hostile and abusive work environment.

44. Defendants' behavior constituted unlawful discrimination in violation of New York State Law 296(a).

## AS AND FOR A FOURTH CAUSE OF ACTION

### UNDER NEW YORK EXECUTIVE LAW §296

45. Ms. Byer repeats and realleges each and every allegation set forth herein in the proceeding paragraphs as though fully set forth herein.

46. Defendants directly participated in and aided and abetted in the creation of a hostile work and abusive work environment because of Ms. Byer's race.

47. Defendants through their comments and their demeanor and control over PHS aided and abetted the abusive and discriminatory behavior directed at Ms. Byer.

48. As such defendants violated New York Executive Law §296(6).

49. Defendants' conduct caused Ms. Byer severe and permanent emotional harm and economic damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

50. Ms. Byer repeats and realleges each and every allegation set forth herein in the proceeding paragraphs as though fully set forth herein.

51. The FLSA, 29 U.S.C. § 207 requires employers to pay non-exempt employees one and half times the regular rate of pay for all hours worked over 40 hours per work week.

52. PHS permitted and required Ms. Byer to routinely work more than 40 hours a work week without overtime compensation.

53. PHS' actions, policies and practices violate the FLSA overtime requirement by regularly, repeatedly and continuously failing to compensate Ms. Byer at the required overtime rate.

54. Defendants used PHS and Dental Divas to intentionally circumvent applicable wage and hour laws.

55. As a direct and proximate cause of PHS' unlawful conduct Ms. Byer suffered a loss of income among other damages.  Under the FLSA, Ms. Byer is entitled to back pay, including interest and an equal amount of liquidated damages, attorneys' fees and costs incurred in connection with this claim and Ms. Byer makes this claim accordingly.

56. The foregoing conduct as alleged constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) in which PHS knew, showed a reckless disregard for the fact that its compensation practices were in violation of the Federal Law.

## AS AND FOR A SIXTH CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE NEW YORK LABOR LAW

57. Ms. Byer repeats and realleges each and every allegation set forth herein in the proceeding paragraphs as though fully set forth herein.

58. PHS was Ms. Byer's employer within the meaning of the New York Labor Law and she is entitled to its protections. Ms. Byer was classified as a dental assistant under the Labor Law and was entitled to be paid at a rate of one and a half times her normal regular rate for all hours over 40 hours in a work week. *See* NY Labor Law § 650 et seq; 12 NYCRR 142 – 2.2.

59. Ms. Byer worked and was required to work approximately 60 – 70 hours a week for PHS continuously from 2008 through approximately November 2015. During the entire time Ms. Byer was employed by PHS, Ms. Byer was never paid overtime pay as required by the New York Labor Law. Defendants used PHS and Dental Divas to circumvent applicable wage and hour laws.

60. As a result of the foregoing, Ms. Byer was damaged on the premises that PHS failed to pay her a proper wage a required under the New York Labor Law. *See* NY Labor Law § 650 et seq.; 12 NYCRR 142 – 2.2.

61. Under New York Labor Law § 663, Ms. Byer is entitled to make a claim for damages in the amount of unpaid overtime wages. She hereby makes a claim for such damages in the amount of overtime wages owed, together with all costs, reasonable attorneys' fees, prejudgment interest as required under the Civil Practice Law and Rules and unless excused an additional amount as liquidated damages equal to one hundred percent (100%) of the total of underpayments found to be due.

## DEMAND FOR JURY TRIAL

62. Pursuant to FRCP Rule 38 and related provisions of law, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Byer respectfully requests that this Court enter an Order:

a) awarding Ms. Byer her past lost wages and benefits in an amount to be determined at trial;

b) awarding Ms. Byer damages for her pain and suffering, loss of enjoyment of life, humiliation and other injuries an amount to be determined at trial;

c) directing plaintiff to pay all reimbursed medical expenses incurred by Ms. Byer as a result of stress and anxiety resulting from the discrimination she suffered and the hostile working condition she endured including diagnostic analysis treatment and therapy;

d) that defendants pay Ms. Byer the costs of this action together with reasonable attorneys' fees and disbursements;

e) a judgment against defendants for violation of the overtime provisions of the FLSA;

f) a judgment that defendants' violation of the FLSA were willful;

g) a judgment awarding plaintiff the amount of unpaid wages owed, liquidated damages, an award of prejudgment interest and an award of projudgment interest;

h) an award of reasonable attorneys' fees and costs as a result of the violation of FLSA and New York Labor Law; and

i) for such other and further relief in law and equity as this Court may deem appropriate and just.

Dated: June 23, 2017  WOODS OVIATT GILMAN, LLP
Rochester, New York

By: s/: William G. Bauer
William G. Bauer, Esq.
*Attorneys for Plaintiff*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585.987.2800
wbauer@woodsoviatt.com

{4988781: }  14

# EXHIBIT A

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Lacarrie Byer<br>141 Roxborough Road<br>Rochester, NY 14619 | From: | Buffalo Local Office<br>6 Fountain Plaza<br>Suite 350<br>Buffalo, NY 14202 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2016-00839 | **Charlene Mc Kinnon,** Investigator | (716) 551-4447 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*(signature)*
John E. Thompson,
Local Office Director

MAR 2 8 2017
*(Date Mailed)*

cc:  Office Manager
PERIODONTAL HEALTH SPECIALISTS OF ROCHESTER, PLLC
1815 Clinton Ave., Suite 510
Rochester, NY 14618

William G. Bauer
WOODS OVIATT GILMAN
700 Crossroads Bldg
2 State Street
Rochester, NY 14614

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*